## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, as assignee of individuals who are Covered Persons, JANE DOE-1, a law enforcement officer, JANE DOE-2, a law enforcement officer, PATRICK COLLIGAN and PETER ANDREYEV<br><br>Plaintiffs,<br><br>v.<br><br>PEOPLEWHIZ, INC., RICHARD ROES 1-10, fictitious names of unknown individuals and ABC COMPANIES 1-10, fictitious names of unknown entities,<br><br>Defendants. | Civ. No. 1:25-cv-00237-HB<br><br>**DEFENDANT PEOPLEWHIZ, INC.'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL PERSONAL JURISDICTION DISCOVERY** |

## I.    **INTRODUCTION**

According to Plaintiffs' motion, there exists no distinction between jurisdictional and merits-based discovery.  Plaintiffs argue that, because they seek to establish specific personal jurisdiction under the "effects test", they have license to conduct exceptionally broad, merits-based discovery that goes to the heart of Plaintiff's statutory claims against PeopleWhiz for alleged violations of Daniel's Law.  Even assuming that the effects test applied—which it does not—and

1

Plaintiffs had pled a prima facie case of specific personal jurisdiction under the effects test—which they have not—the merits-based discovery they seek is wildly disproportionate to the needs of this case.

The Third Circuit has provided the following important guidance to District Courts concerning the narrow scope of jurisdictional discovery:

> We note that such jurisdictional discovery is not a license for the parties to engage in a fishing expedition and that the District Court should take care to circumscribe the scope of discovery to only the factual questions necessary to determine its jurisdiction. This principle is all the more true after the 2015 amendments to the Federal Rules of Civil Procedure, which added a discussion of proportionality to Rule 26(b)(1). Applying that rule here, the [Plaintiffs] may obtain only jurisdictional discovery regarding nonprivileged matter that is relevant to personal jurisdiction over [PeopleWhiz] and proportional to the needs of the case, taking into account the importance of the issue at stake, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issue, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

*Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 782 (3d Cir. 2018) (cleaned up). The merits-based discovery requests Plaintiffs that are the subject of Plaintiffs' motion run afoul of each of these tenants articulated by the Third Circuit.

To the extent Plaintiffs served discovery requests that appear to have been tailored to the question of this Court's jurisdiction, PeopleWhiz fully responded to each such request.  The information and records supplied by PeopleWhiz in its responses establish:

- PeopleWhiz has never contracted with any person or business located in New Jersey;

- Since December 1, 2023, PeopleWhiz has not advertised or marketed its services, whether to residents of New Jersey, or otherwise;

- PeopleWhiz has never had any interactions with any New Jersey government agency;

- PeopleWhiz has never commenced any legal actions in New Jersey;

- PeopleWhiz has never been authorized to do business in the State of New Jersey;

- Between December 1, 2023 and the date of its responses, PeopleWhiz generated less than $4,000 in revenue from individual subscribers located in New Jersey—less than 3% of its overall revenue;

There are no facts which have either been pled in the Complaint, or disclosed in this jurisdictional discovery process which supports this Court's exercise of specific personal jurisdiction over PeopleWhiz—a small, California-based business.

Now, Plaintiffs ask this Court to compel PeopleWhiz to respond to discovery requests which—on their face—seek information or records going straight to the merits of Plaintiffs' claims. They attempt to justify these improper, irrelevant, and disproportionate requests by claiming they are necessary for

Plaintiffs' to establish various elements of the effects test. However, the effects test applies to intentional torts, which Plaintiffs have not pled. Even if Plaintiffs' statutory Daniel's Law claims could be considered an intentional tort, Plaintiffs complaint is devoid of any non-conclusory jurisdictional facts under which Plaintiffs have made a prima facie showing of jurisdiction under the effects test. And even if they had pled a prima facie case, there is no authority that grants Plaintiffs license to conduct roving, disproportionate, merits-based discovery at this stage of the case.

As discussed below, the Court should deny Plaintiffs' motion in its entirety.

## II.    RELEVANT BACKGROUND

On May 14, 2025, PeopleWhiz served its responses to Plaintiff's discovery requests. In its responses, PeopleWhiz disclosed substantial information and records relating to its contact (or lack thereof) with the State of New Jersey. Additionally, PeopleWhiz produced approximately 500 pages of records, which included corporate documents, trademark records, financial records showing state-by-state revenues, and website records showing the number of background searches PeopleWhiz users obtained on a state-by-state basis. PeopleWhiz submitted courtesy copies of its discovery responses to the Court on May 14, 2025.

III.    **To The Extent Plaintiffs Have Propounded Genuine Jurisdictional**
**Discovery Requests, PeopleWhiz Has Provided Full and Complete**
**Responses To Those Requests**

Plaintiffs have served some discovery requests directed toward PeopleWhiz's contacts with the State of New Jersey.  The remainder of Plaintiffs' request each go to the substantive merits and elements of their Daniel's Law claims, and are addressed in the next section of this brief.  Plaintiffs have taken issue with PeopleWhiz's responses to a handful of Special Interrogatories, and Requests for Production which appear tailored to jurisdictional issues.  There are three such requests in total.

Special Interrogatory No. 3 asks PeopleWhiz to identify anyone "involved in any marketing, advertising, soliciting, or offering of any product, service or digital platform that has published, provided access to, or otherwise made available information subject to Daniel's Law, including without limitation in New Jersey or to New Jersey customers."  Motion, p.. 13-14.  PeopleWhiz responded by stating it has nobody to identify, because it has not marketed or advertised its services since December 2023.  Motion, p. 14 at n.6.  Plaintiffs argue this response is incomplete because PeopleWhiz "did not address whether it solicits or offers such a product, or identify any relevant director, officer, or other employee."  *Id*.

In the context of Special Interrogatory No. 3, the words "marketing, advertising, soliciting, or offering," are all synonymous terms—which is obviously why they are used together in the same interrogatory (i.e. a promotional "offering"). If PeopleWhiz did not "market" or "advertise" its services, then it obviously did not "solicit" or engage in any "offering" of its services either. PeopleWhiz therefore would not have any individual to identify in response to this interrogatory. If Plaintiffs meant something else by the words "soliciting" or "offering" (i.e. as something other than a synonym for "marketing" or "advertising") then they have failed to explain what they mean by these terms in their motion, nor did they offer a special definition of these terms in their interrogatories.

Special Interrogatory No. 4 asks PeopleWhiz to "[i]dentify any advertising or marketing activities conducted by [PeopleWhiz] or anyone else acting on [its] behalf…" Plaintiffs claim that PeopleWhiz "assert[ed] their marketing activities are nationwide and thus irrelevant to jurisdiction." Motion, p. 15. This is false. PeopleWhiz responded by stating it "has not engaged in any marketing or advertising activities since December 1, 2023." PeopleWhiz therefore has no further information to provide in response to this request.

Request for Production No. 2 asks PeopleWhiz to produce documents "reflecting or relating to [its] revenues, profits, or income derived from any

product or service that publishes, provides access to, or otherwise makes available information subject to Daniel's Law…"  Plaintiffs claim that PeopleWhiz "refused to produce any responsive documents."  This is, once again, false.  In response to this request, PeopleWhiz agreed to "produce documents sufficient to show the revenues collected from active subscribers located within the State of New Jersey, and active subscribers located in other states within the United States, for background search subscription services from December 1, 2023 to the present."  Consistent with its response, PeopleWhiz produced a spreadsheet containing this information.

## IV.    **The Remaining Discovery Requests That Are the Subject of Plaintiffs' Motion Impermissibly Go To The Merits of Their Claims.**

The remainder of Plaintiffs' requests go straight to the merits of their Daniel's Law claims against PeopleWhiz.  Those requests are: Special Interrogatories 7-10, and Requests for Production 5-7, 10-17, and 21.  Plaintiffs argue that this discovery is relevant to the effects test because it goes to PeopleWhiz's "knowledge" and "intent".  See Motion, pp. 17-20, 24-27, 29-34, 36.  As discussed below, the effects test does not apply and, even if it did, the merits discovery sought by Plaintiffs is unnecessary to establish any element of the effects test.

## A.     The *Calder* "Effects" Test Does Not Apply in This Case Because Daniel's Law is Not An Intentional Tort.

Plaintiffs concede that the *Calder* "effects" test only applies to intentional torts.  Plaintiffs contend that Daniel's Law triggers the Calder "intentional tort" standard because the underlying act of disclosing protected information is volitional. This argue disregards this Court's ruling that Daniel's Law is governed by a negligence standard. *Atlas Data Privacy Corp. v. We Inform, LLC*, 758 F. Supp. 3d 322, 341 (D.N.J. 2024) ("Daniel's Law must be read as imposing liability only if a defendant unreasonably disclosed or made available [information] after the statutory deadline had expired."). This ruling should foreclose Plaintiffs' reliance on the *Calder* "effects" test.

Even if the Court considers Plaintiffs' argument that Daniel's Law is an intentional tort, that theory should be rejected.  Plaintiffs contend that even if liability under the statute arises from a failure to respond to an opt-out request, the initial act of "disclosing, re-disclosing, or otherwise making available" the information is deliberate—and that alone satisfies *Calder's* intent requirement.  Motion, pp. 4-5. That argument misunderstands what constitutes an intentional tort. As a matter of black-letter doctrine, a voluntary act is not enough. Intentional tort liability requires that the defendant either desire the harmful result or know that the harm is substantially certain to occur.

The Restatement (Second) of Torts § 8A (1965) defines "intent" to mean that the actor either "desires to cause the consequences of his act" or "believes that the consequences are substantially certain to result from it." Comment a explains that intent refers not to the act itself, but to its consequences: "Intent … has reference to the consequences of an act rather than the act itself" (emphasis added). For example, someone who knowingly discloses information does not act with tortious "intent" unless the person also intends—or is substantially certain—that the disclosure will cause legally cognizable harm.

Comment b reinforces this point by contrasting intent with recklessness and negligence. If the harmful consequence is only a possibility or risk—not a certainty—then the conduct is not intentional. "As the probability that the consequences will follow decreases ... the actor's conduct loses the character of intent." § 8A cmt. b. This distinction is critical. Under Daniel's Law, liability arises not from an intent to harm, but from the failure to act in response to a nondisclosure request. The legal duty arises from omission—and the mental state required is at most negligence, not intent.

Plaintiffs argue that Daniel's Law creates an intentional tort for purposes of *Calder* because it involves a volitional act—disclosure of protected information— even if the actor does not intend any harm. In Plaintiffs' view, some intentional torts require intent only as to the act, not its consequences. They cite Restatement

9

(Second) of Torts §§ 161 and 825, as well as common-law battery and disclosure torts, to support this theory.  That argument misreads these sources. Section 161, which addresses continuing trespass, imposes liability for the continued presence of a structure or object "tortiously" placed on land. But "tortious" conduct under the Restatement includes negligence, recklessness, and strict liability. See § 6 cmt. a ("The word 'tortious' is appropriate to describe … an act which is intended … [or] negligent … [or] conduct … although no such harm is intended."). In other words, § 161 speaks to the character of the conduct—not the actor's mental state—and does not classify all such conduct as "intentional." Section 825, which defines "intentional" invasion in nuisance law, expressly adopts the § 8A standard. See § 825 cmt. a ("The rule stated in this Section is a special application of the rule stated in § 8A."). Under § 825, an invasion is "intentional" only if the actor (a) acts for the purpose of causing it, or (b) knows the invasion is substantially certain to result. *Id.* cmt. c ("It is not enough … that the actor realizes or should realize that his conduct involves a serious risk … He must either act for the purpose of causing it or know that it is resulting or is substantially certain to result."). Neither volitional conduct nor foreseeable consequences suffices. Both §§ 161 and 825 align with § 8A's core principle: intent refers to consequences, not conduct. Even if disclosure is deliberate, Daniel's Law does not impose liability unless the defendant failed to act reasonably

after receiving a nondisclosure request. That omission-based framework is rooted in negligence, not intent.

Plaintiffs also rely on common-law torts such as battery and public disclosure of private facts to argue that some torts require intent only as to conduct. But these examples do not support their position. In *Monturi v. Englewood Hospital*, 246 N.J. Super. 547, 588 A.2d 408, 410 (App. Div. 1991), the court affirmed that battery requires intent to contact, not intent to harm. But battery is an exceptional tort: it involves direct physical intrusion, not consequences or foreseeability. *See* Restatement (Second) of Torts § 18 & cmt. e (requiring only that the contact be "intended," not necessarily harmful). Daniel's Law, by contrast, is not a contact-based tort—it penalizes the unreasonable failure to delist or withhold private information, which is fundamentally different in character and structure. Similarly, *Romaine v. Kallinger*, 537 A.2d 284, 297 (N.J. 1988), addressed the public disclosure of private facts. While that tort does not require the publisher to intend that the disclosure be unreasonable, it does require intentional publication—not negligence or inadvertence in not responding to a takedown request. Daniel's Law imposes a negligence standard.

**B.    Even if the *Calder* "Effects" Test Applies, the Discovery Sought By Plaintiffs is Not Necessary to the Court's Analysis of that Test.**

**1.    The Calder Framework and Its Requirements**

11

In *Calder v. Jones*, 465 U.S. 783 (1984), the Supreme Court held that personal jurisdiction was appropriate where a non-resident defendant committed an intentional tort expressly aimed at the forum state, and the harm was primarily felt there. *Id.* at 789. The Third Circuit has adopted the following three-part test under *Calder*: (1) The defendant committed an intentional tort; (2) The plaintiff felt the brunt of the harm in the forum state; (3) The defendant expressly aimed the tortious conduct at the forum state. *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 265-66 (3d Cir. 1998). In Section I above, we addressed the intentional tort requirement that by itself precludes application of the *Calder* test here. The "express aiming" prong also is essential. The Third Circuit has consistently emphasized that the *Calder* test "can only be satisfied if the plaintiff can point to contacts which demonstrate that the defendant expressly aimed its tortious conduct at the forum, and thereby made the forum the focal point of the tortious activity." *Id.* at 266 (emphasis added). However, *Hasson v. FullStory, Inc.*, 114 F.4th 181 (3d Cir. 2024), clarified the scope and applicability of this test and how it relates to the traditional purposeful-availment analysis.

2. ***Hasson* and its Progeny Clarify that the "Effects" Test Requires that Defendant Expressly Aim Its Conduct to the Jurisdiction**

The Third Circuit's recent decision in *Hasson v. FullStory, Inc.*, 114 F.4th 181 (3d Cir. 2024), clarifies that the *Calder* "effects" test and the traditional "purposeful

availment" test for specific jurisdiction are analytically distinct but not mutually exclusive. The Court emphasized that the two tests are "cut from the same cloth" but "have distinct requirements." *Id.* at 189 (quoting *Marten v. Godwin*, 499 F.3d 290, 297 (3d Cir. 2007)). Specifically, the *Calder* "effects" test:

> [R]equire[s] that the tortious actions of the defendant have a forum-directed purpose[—a requirement that] is not applicable in the more traditional specific jurisdiction analysis . . . . Unlike th[e] express requirement in the effects test, the traditional specific jurisdiction analysis simply requires that the plaintiff's claims arise out of or relate to the defendant's forum contacts. We do not agree with the argument that this traditional requirement is the equivalent of *the more demanding relatedness requirement of the effects test*.

*Id.* (quoting *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 99 (3d Cir. 2004) (emphasis in original)).  Applying those principles, the *Hasson* Court found that the plaintiff had failed to establish jurisdiction under either test. Although the underlying claim there was wiretapping—a statutory tort with an intentional conduct requirement—the plaintiff's failure to plead express forum targeting defeated jurisdiction under *Calder*, and his inability to show that the claims "arose out of or related to" Papa John's in-forum contacts foreclosed jurisdiction under the traditional test as well. *Id.* at 190-92.

In the wake of the Third Circuit's decision in *Hasson v. FullStory, Inc.*, several district courts have applied its clarified framework for specific personal jurisdiction.

13

The following three cases—*Click Go*, *Rhodes*, and *Ingrao*—are the most recent and instructive examples.

In *Click Go and Buy Inc. v. IT Assets, Inc.*, No. 23-20094, 2024 WL 2744066 (D.N.J. May 28, 2024), the court applied the *Calder* "effects" test in light of *Hasson* to a fraud claim, i.e., an intentional tort. The court emphasized that "Calder requires more," and that a defendant is not subject to personal jurisdiction in the plaintiff's home state "as soon as the defendant learns what that state is." *Id.* at 8 (quoting *Hasson*, 114 F.4th at 192). The court noted that plaintiff's theory—that defendant "expressly aimed its tortious conduct" by directing fraudulent communications into New Jersey—failed because plaintiff's location was not known to defendant until after the initial contact. As the court explained, "ultimately learn[ing]" of the plaintiff's location after the fact "does not, in this case, satisfy the 'effects' test's intentionality requirement." *Id.*(citing *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 454-55 n.5 (3d Cir. 2003)). As in *Hasson*, the court stressed that "[t]he mere allegation that the plaintiff feels the effect of the defendant's tortious conduct in the forum because the plaintiff is located there is insufficient to satisfy Calder." *Id.* at 8 (quoting *IMO Indus.*, 155 F.3d at 263). Rather, a plaintiff must "point to other actions that adequately demonstrate[] that the defendants targeted (or 'expressly aimed' their conduct at) the forum, and thereby show that the forum was the focal point of the tortious activity." *Id.*(internal citation omitted). The court concluded that the brunt

14

of plaintiff's harm may well have occurred in New Jersey, but that was not enough. "Because Plaintiff fails to show that Defendant 'manifest[ed] behavior intentionally targeted at and focused on the forum,'" jurisdiction was lacking. *Id.* at 8 (quoting Marten v. Godwin, 499 F.3d 290, 298 (3d Cir. 2007)).

In *Rhodes v. Azeff*, No. CV 22-101, 2025 WL 327297 (W.D. Pa. Jan. 22, 2025), the court dismissed defamation claims for lack of personal jurisdiction, applying *Hasson.* Although the complaint plausibly alleged defamation and harm in Pennsylvania, it did not satisfy the express aiming prong. As the court explained, "'the mere posting of allegedly defamatory statements online will not suffice, as explained in *Hasson*.'" *Id.* Citing *Marten v. Godwin*, 499 F.3d 290, 299 (3d Cir. 2007), the court reiterated that a plaintiff must point to "additional facts connecting the defendant to the forum state other than the plaintiff's location at the time of the retaliatory conduct

In *Ingrao v. AddShoppers, Inc*., No. 2:23-cv-02542, 2024 WL 4892514 (E.D. Pa. Nov. 25, 2024), the court elaborated that, "[t]o satisfy the express aiming prong, the plaintiff must do the following: (1) 'show that the defendant knew that the plaintiff would suffer the brunt of the harm caused by the tortious conduct in the forum,' and (2) 'point to specific activity indicating that the defendant expressly aimed its tortious conduct at the forum.'" *Id.* (quoting *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 266 (3d Cir. 1998)) (emphasis added).  While the complaint

alleged wiretapping and tracking—both intentional torts—and asserted harm in Pennsylvania, the court found that plaintiffs failed to satisfy either component of the "express aiming" prong. Plaintiffs failed to identify any "specific activity indicating that [AddShoppers] expressly aimed its tortious conduct at the forum." *Id.* The court rejected plaintiffs' assertion that deploying tracking code across retail websites, some of which were accessible to Pennsylvania users, constituted intentional targeting. Quoting *Hasson*, the court noted that a software company does not expressly target Pennsylvania "simply by providing code for" a website accessible in the forum. *Id.* at 10 (quoting *Hasson*, 114 F.4th at 195-96). The plaintiffs attempted to distinguish *Hasson* by noting that AddShoppers had directly emailed them, unlike the software company in *Hasson*, which had no contact with the plaintiff. But the court was not persuaded. Even assuming those emails were received in Pennsylvania, the court concluded that "mere interaction with a plaintiff who resides in the forum does not show conduct targeted at the forum itself." *Id.* (citing *Hasson*, 114 F.4th at 196). Echoing *Hasson*, the court declined to "presume express aiming from generalized internet activity" and reaffirmed that the express aiming element requires intentional, forum-focused conduct. *Ingrao*, 2024 WL 4892514, at *10–11.

There is no allegation in the complaint, and Plaintiffs have not pointed to any contacts with New Jersey indicating that PeopleWhiz expressly aimed tortious

conduct at New Jersey, and thereby made New Jersey the focal point of its activity related to this case. For this reason as well, *Calder* does not apply. [1]

## V.    Plaintiff's Cannot Seriously Claim That Requiring PeopleWhiz to Produce Documents Relating to Twenty Thousand E-Mail Notices Allegedly Sent by Plaintiffs is Proportional to the Needs of This Case

Aside from being improper merits-based discovery going to the ultimate issues in this case, Plaintiffs' Requests for Production Nos. 5,  are particularly egregious because they are completely disproportionate to the limited needs of this case at this time.  These requests collectively demand that PeopleWhiz produce copies of the 20,000 e-mail notices that Plaintiffs alleged they sent (or any other communications with Plaintiffs), any responses by PeopleWhiz to those 20,000 e-mail notices, and records showing whether the information of these 20,000 alleged covered person's remained in PeopleWhiz's website 10 days after receipt of their notices.

Plaintiffs inexplicably argues that PeopleWhiz should produce all these records because Atlas does not have access to the e-mails that comprise the nucleus of their assigned Daniel's Law claims against PeopleWhiz.  Motion, p. 19.  This

---

[1] Plaintiffs' repeated references to *Briskin v. Shopify, Inc.,* 87 F.4th 404, 409 (9th Cir. 2023), *reh'g en banc granted, opinion vacated*, 101 F.4th 706 (9th Cir. 2024), *and on reh'g en banc*, 135 F.4th 739 (9th Cir. 2025)*,* add no weight to their position. *Briskin,* a Ninth Circuit decision, is not controlling and is directly contrary to the Third Circuit's controlling law as recently articulated in *Hassan.*

17

argument makes no sense.  Atlas does not provide a legitimate reason why—as the assignee of 20,000 individual Daniel's Law claims—they do not have possession, custody, or control of e-mail communications that are at the very heart of those claims.  Atlas's point that it is an "e-mail provider," is a non-sequitur, because Atlas has not sued PeopleWhiz in its capacity as e-mail provider, but as the assignee of 20,000 claims of alleged "covered persons".  Atlas does not explain why, in its capacity as the assignee of Plaintiffs' claims (not as a mere e-mail provider) it lacks possession, custody, or control over the potentially massive volume of records it has sought from PeopleWhiz under the guise of "jurisdictional discovery".

## VI.    CONCLUSION

For the reasons set forth above, the Court should deny Plaintiffs' motion.

Dated:        July 14, 2025                    Respectfully submitted,


**/s/ John E. Brigandi**
JOHN E. BRIGANDI, ESQ.
**KNUCKLES & MANFRO LLP**
600 East Crescent Avenue, Suite 201
Upper Saddle River, NJ 07458
(201) 391-0370
jeb@km-llp.com
Attorneys for Defendant,
PeopleWhiz, Inc.

18

**/s/ Artin Betpera**
ARTIN BETPERA, ESQ.  (*pro hac vice*)
**BUCHALTER, APC**
18400 Von Karman Ave., Suite 800
Irvine, CA 92612
abetpera@buchalter.com
Attorneys for Defendant,
PeopleWhiz, Inc.